OPINION
{¶ 1} On September 19, 2003, defendant, Ernest Lee Gray, III, was indicted by a Franklin County Grand Jury on one count of attempted aggravated burglary, in violation of R.C. 2923.02 as it relates to R.C.2911.01, two counts of attempted murder, in violation of R.C. 2923.02 as it relates to R.C. 2903.02, two counts of felonious assault, in violation of R.C. 2903.11, and one count of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161. All counts carried both one-year and three-year firearm specifications, in violation of R.C.2941.141 and 2941.145, respectively.
 {¶ 2} The case was tried before a jury in April 2004. At the close of the evidence, the trial court granted the prosecution's motion to dismiss the one-year firearm specifications from each of the six counts and to amend the indictment accordingly. Following deliberations, the jury found defendant guilty of one count of attempted burglary, in violation of R.C. 2923.02 as it relates to R.C. 2911.11, a lesser included offense of attempted aggravated burglary, but not guilty of the accompanying firearm specification; not guilty on both counts of attempted murder; guilty on both counts of felonious assault with the firearm specifications; and guilty on one count of improperly discharging a firearm at or into a habitation with the firearm specification. The trial court imposed prison terms of six months on the attempted burglary count to be served concurrently with a six-month sentence imposed in a related case; two years on each of the felonious assault counts with an additional three years for each of the firearm specifications; and two years on the improperly discharging a firearm at or into a habitation with an additional three years for the firearm specification. The court ordered the sentence on the attempted burglary count to be served concurrently with the other counts, which were ordered to be served consecutively with each other.
 {¶ 3} Defendant timely appeals his conviction and sentence, advancing the following three assignments of error for review:
I. The trial court erred when it entered judgment against the appellant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
II. The trial court violated Ohio law and constitutional safeguards when it sentenced appellant to consecutive sentences for the same offense.
III. The trial court committed reversible error when it ordered that appellant's sentence as to the firearm specifications were to run consecutively contra R.C. §§ 2941.141 and 2941.145.
 {¶ 4} Evidence adduced at trial relevant to the issues raised on appeal established the following. On September 2, 2003, Denise Robertson lived with her boyfriend, William Jones, and her two teenage sons in an apartment on Ariel Drive in Columbus, Ohio. Sometime between 2:30 and 2:45 a.m., Robertson and Jones were lying awake in one of three second-floor bedrooms in the apartment; Robertson's sons were asleep in the other bedrooms. Robertson heard a noise, similar to a screen being cut, emanating from outside the bedroom window. She looked out the window and observed four African-American males wearing dark-colored hooded sweatshirts standing directly below the bedroom window, just outside the ground-floor living room window. Assuming the men were trying to break into the apartment, Robertson shouted and cursed in an effort to chase them away. When that effort proved unsuccessful, Jones joined her at the window, shouting and cursing as well. At one point, Jones shouted, "you must want to die. You got to want to die, you know. You want to come and break in somebody's house when they're at home." (Tr. Vol. II, 133.) The men initially ignored the shouting, but eventually ran to a maroon Chevy Lumina parked nearby. Three of the men entered the car without incident; however, as the driver entered the car, he pointed a gun at the bedroom window, shouted "no, you die, bitch," fired two shots, and sped off. (Tr. Vol. II, 63, 134.) The first bullet came through the bedroom window, barely missing Robertson and Jones, and imbedded in one of the bedroom walls. The second bullet struck the outside of the apartment near the bedroom window. After the second shot was fired, Jones went downstairs to make certain no one had entered the apartment. Robertson called the police and provided a description of the car.
 {¶ 5} Shortly thereafter, a police officer patrolling the neighborhood initiated a traffic stop after noticing a maroon Chevy Lumina driving slowly without its headlights illuminated. The officer then received a radio dispatch concerning an attempted home invasion in which the assailants had fired shots at the victims and left the scene in a maroon car. Suspecting that the occupants of the car had been involved in the attempted home invasion, the officer detained the suspects.
 {¶ 6} The police informed Robertson and Jones that four suspects had been apprehended. Jones drove to the location and identified the car as the one in which the men had left the apartment complex. He also identified all four suspects as the persons he had seen outside his apartment; in particular, he identified defendant as the person who fired a gun at the window.
 {¶ 7} Police investigation revealed a bullet strike in the lower portion of the second-floor window of the apartment building; a second strike was found in the siding near the window. One spent .22 caliber slug was recovered from the bedroom. The second projectile, presumably lodged inside one of the bedroom walls, was never recovered.
 {¶ 8} Defendant's first assignment of error challenges his felonious assault convictions as not supported by sufficient evidence and as being against the manifest weight of the evidence. Although defendant purports to challenge both the sufficiency and weight of the evidence, a close review of defendant's argument reveals an attack only upon the sufficiency of the evidence. We thus proceed accordingly.
 {¶ 9} Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. "Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict * * *." State v. Smith (1997), 80 Ohio St.3d 89, 113, citing Thompkins, supra. In essence, sufficiency is a test of adequacy.Thompkins, supra. "In reviewing the record for sufficiency, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"Smith, supra, at 113, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 10} Defendant challenges his felonious assault convictions solely on grounds that the evidence was insufficient to prove that he fired the shots toward Robertson and Jones in an attempt to cause physical harm. Defendant contends the evidence establishes only an attempt to frighten or intimidate them. We disagree.
 {¶ 11} R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." An attempt to commit an offense is made when a person purposely or knowingly engages in conduct that, if successful, would constitute or result in the offense. R.C.2923.02(A). A "criminal attempt" is an act constituting a substantial step in a course of conduct planned to culminate in the commission of the crime but which falls short of completion of the crime. State v. Group,98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 101, citing State v. Woods
(1976), 48 Ohio St.2d 127, paragraph one of the syllabus. A substantial step requires conduct that is strongly corroborative of the actor's criminal purpose. Group, supra. Thus, to establish the "attempt to cause physical harm" element of felonious assault, the state must prove beyond a reasonable doubt that the defendant took some overt action constituting a substantial but ineffectual step toward accomplishing physical harm through use of a deadly weapon. See State v. Kline (1983),11 Ohio App.3d 208, 214.
 {¶ 12} This court has held that an attempt to cause physical harm may be inferred from the act of firing a gun in the direction of an individual. State v. Thompson (Nov. 10, 1997), Franklin App. No. 97APA04-489. ("When appellant fired the gun in the direction of [the victim], he committed an overt act sufficient to support the finding that he knowingly attempted to cause physical harm.") Other courts have held similarly. In State v. Hoffert, Hamilton App. No. C-020168, 2002-Ohio-6343, the court held that evidence indicating that the assailant pointed his gun and fired in the direction of police officers was sufficient to support a finding of felonious assault. Id. at ¶ 11. In State v.Gregory (1993), 90 Ohio App.3d 124, the court ruled that firing a gun where there is a risk of injury to one or more persons is sufficient evidence to prove that the defendant knowingly attempted to cause physical harm. Even firing a weapon randomly in the direction of individuals arguably within range of the shooter is sufficient to demonstrate an attempt to cause physical harm. State v. Phillips (1991),75 Ohio App.3d 785, 792.
 {¶ 13} Here, defendant concedes that he knowingly fired a weapon in the direction of the victims. Pursuant to the aforementioned cases, such evidence, standing alone, is sufficient to support the convictions for felonious assault. Moreover, no evidence supports defendant's assertion that he fired the shots only to frighten or intimidate the victims. Indeed, the victims' testimony, coupled with the physical evidence, refutes defendant's claim. Both victims testified that defendant shouted "no, you die, bitch" as he fired the shots. Both victims testified that the first bullet nearly struck them. In addition, bullet holes were found in the lower portion of the bedroom window and in the siding near the window, and a spent slug was recovered from the bedroom. This evidence clearly supports an inference that defendant fired the gun in an attempt to cause physical harm. Had defendant intended only to scare the victims, he could have done so in any number of ways other than firing shots directly toward them. When defendant fired the gun in the direction of Robertson and Jones, he committed an overt act sufficient to support the finding that he knowingly attempted to cause physical harm.Thompson, supra. Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that defendant knowingly attempted to cause physical harm to Robertson and Jones by means of a deadly weapon. The first assignment of error is not well-taken.
 {¶ 14} In his second assignment of error, defendant contends the trial court erred in failing to merge, for purposes of sentencing, his felonious assault convictions with each other and with his conviction for improperly discharging a firearm at or into a habitation. Defendant maintains he should have received only one two-year sentence for all three offenses rather than three consecutive two-year sentences.
 {¶ 15} The state contends that defendant waived the claimed error because he failed to object at the time of trial. A defendant's failure to object at trial constitutes a waiver of the error claimed. State v.Comen (1990), 50 Ohio St.3d 206, 211. However, a reviewing court may consider plain errors or defects affecting substantial rights even where they were not brought to the attention of the trial court. Crim.R. 52(B); State v. Kelly, Franklin App. No 02AP-195, 2002-Ohio-5797, at ¶ 26. "Plain error is defined as, `obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings.'" State v.Dubose, Mahoning App. No. 00-C.A.-60, 2002-Ohio-3020, ¶ 24, quotingState v. Craft (1977), 52 Ohio App.2d 1, 7. "Notice of plain error under Crim.R. 52(B) should be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 16} Defendant's contention implicates R.C. 2941.25, Ohio's multiple count statute, which provides:
(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 17} "Under an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." State v. Rance (1999), 85 Ohio St.3d 632, paragraph one of the syllabus, overruling Newark v. Vazirani (1990),48 Ohio St.3d 81. (Emphasis sic.) "Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.' * * * And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. * * *" Rance, at 638-639. (Citation omitted.) If the sentence imposed by the trial court is in accord with R.C. 2941.25, the harmony with legislative intent precludes an unconstitutional label.Kelly, citing Rance, supra, at 635.
 {¶ 18} We first address defendant's contention that he was improperly sentenced to consecutive two-year sentences on the two counts of felonious assault. Courts addressing this issue have held that because felonious assault is a crime defined in terms of conduct toward "another," there is a separate or "dissimilar" import with respect to each victim of that harm or risk of harm. Phillips, supra, at 790; Statev. Lee (Sept. 3, 1998), Franklin App. No 97APA12-1629 (defendant's firing of a weapon into a bedroom knowing there were three people inside gave rise to a finding that his acts were of dissimilar import and a finding of separate animus for each act; thus, three consecutive terms for felonious assault were appropriate); State v. Jones (May 31, 1994), Franklin App. No. 93APA09-1261 (evidence that the accused purposefully placed two victims at harm by separately aiming and firing at each supported trial court's finding that two shootings were crimes of dissimilar import); Dubose, supra (even where the crime is a part of a single course of conduct but there are two distinct victims, a separate animus may exist for each offense); State v. Gibson, Sandusky App. No. S-02-016, 2003-Ohio-1996, at ¶ 19 (where there is a situation where the defendant's conduct puts more than one person at risk, the crimes are of dissimilar import); State v. Miller (June 15, 1995), Franklin App. No. 94APA10-1458.
 {¶ 19} In this case, defendant's conduct put two persons at risk of physical harm. The evidence established that defendant was aware there were two people in the bedroom at the time he fired the gun at the window. Robertson and Jones both testified that they shouted and cursed at defendant prior to the shots being fired and that prior to shooting, he verbally acknowledged them by shouting in response. Moreover, physical evidence established two bullet strikes at or near the window. By firing two shots toward the window, defendant demonstrated the potential to cause harm to each of the victims. Consequently, he was properly convicted and sentenced on two counts of felonious assault pursuant to R.C. 2903.11(A)(2).
 {¶ 20} Further, the trial court's imposition of a separate conviction and sentence for the offense of improperly discharging a firearm at or near a habitation was also proper under R.C. 2941.25. As noted, a person commits felonious assault under R.C. 2903.11(A)(2) by knowingly causing or attempting to cause physical harm to another by means of a deadly weapon. A person commits the offense of improperly discharging a firearm at or into a habitation under R.C. 2923.161(A)(1) by knowingly discharging a firearm at or into an occupied structure that is the permanent or temporary habitation of another person. R.C. 2909.01(C)(2) defines "occupied structure," in pertinent part, as any house which at the time of the offense is "occupied as the permanent or temporary habitation of any person whether or not any person is actually present."
 {¶ 21} The Eighth District Court of Appeals has determined that the offenses at issue are not allied offenses of similar import. In State v.Mallet (Aug. 17, 2000), Cuyahoga App. No 76608, the court held that the analysis utilized by the court in State v. Butticci (Nov. 22, 1996), Lake App. No. 95-L-121, which considered the issue under the test set forth inVazirani, still applied under the new test set forth in Rance. Quoting extensively from Butticci, the Mallet court held:
In comparing the foregoing offenses, this court would agree that, in most instances, a person who improperly discharges a firearm at a house will also commit the offense of felonious assault. However, this will not be the case if an individual is not present in the house when the shots are fired. Under the latter circumstances, an accused has only committed the offense of improper discharge.
Specifically, we would note that before a defendant can be charged with felonious assault, he must have attempted to cause, or actually caused, harm to another person. Stated differently, the person must use the deadly weapon, i.e., a firearm, in such a way that he knowingly creates a risk of harm to another person.
In contrast, a defendant can be convicted of improperly discharging a firearm even when his conduct did not create a risk of harm to another person. Pursuant to R.C. 2909.01(C)(2), another person does not have to be present in the house before it will be considered an occupied structure. As a result, the offense of improper discharge can be committed without the element of a knowing attempt to cause harm to another.
Id., quoting Butticci, supra.
 {¶ 22} The court in State v. Elko, Cuyahoga App. No. 83641,2004-Ohio-5209, held similarly:
For R.C. 2923.161 to apply, it is irrelevant whether the structure is occupied or unoccupied at the time of the shooting so long as it is found to be someone's habitation. Moreover, R.C. 2923.161 specifically requires that the perpetrator uses a firearm in order to commit the crime. The revised code defines a "firearm" as a deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. R.C. 2923.11(B)(1). R.C. 2923.161 basically applies when a firearm is discharged at a specific structure or in a prohibited area, regardless of the presence of people.
R.C. 2903.11 applies when a person knowingly causes or attempts to cause physical harm to another. The crime can be committed anywhere. The perpetrator can either use a `deadly weapon' or a `dangerous ordnance' in committing the offense. A `deadly weapon' is any instrument, device, or thing capable of inflicting death, and designed for use as a weapon, or possessed, carried, or used as a weapon. R.C. 2923.11(A). A `dangerous ordnance' is any firearm, pistol rifle, shotgun, cannon, or artillery piece. R.C. 2923.11(L). R.C. 2903.11 is designed to protect the person, rather than a specific structure or area.
Given the plain language of the statutes, the appellant can be charged and convicted of discharging a firearm into a habitation and also for felonious assault if there are people inside the habitation at the time of the shooting. If none of the victims had been inside the house at the time the appellant shot the window, then he could only have been convicted of R.C. 2923.161. However, since all three victims were inside the habitation, and could have been behind the basement bedroom window at the time of the shooting, the appellant's convictions under both R.C.2923.161 and R.C. 2903.11 were proper. * * *
Id. at ¶ 92-94.
 {¶ 23} The Seventh District Court of Appeals adopted the reasoning ofMallet, supra, in Dubose, supra:
A comparison of the two offenses suggests that while one who knowingly discharges a firearm at a house might also commit the offense of felonious assault, that will only be the case if someone is at home when the discharge occurs. Accordingly, one may commit the offense of wrongful discharge of a firearm into an occupied structure without attempting to cause harm to another. [Citation omitted.] Conversely, one may commit the offense of felonious assault, which involves the more general use of a deadly weapon, without the wrongful discharge of a firearm. * * *
Id. at ¶ 58.
 {¶ 24} We concur in the well-reasoned decisions of the Seventh and Eighth District Courts of Appeal. Reviewed in the abstract, felonious assault and improperly discharging a firearm at or into a habitation are not allied offenses because the commission of one offense can occur without commission of the other. Because the offenses are of dissimilar import, consecutive sentences are permissible. See Rance, at 636 ("If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted."). Defendant's second assignment of error is not well-taken.
 {¶ 25} By the third assignment of error, defendant contends that the trial court erred in imposing three consecutive three-year terms of actual incarceration for the firearm specifications.
 {¶ 26} At the time of the offenses, R.C. 2929.14 provided, in pertinent part: (D)(1)(a) * * * [I]f an offender who is convicted of * * * a felony also is convicted of * * * a specification of the type described in section * * * 2941.145 of the Revised Code, the court shall impose on the offender * * * the following prison term:
* * *
(ii) A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and * * * using it to facilitate the offense[.]
* * *
(b) * * * A court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section for felonies committed as part of the same act or transaction.
 {¶ 27} Thus, pursuant to R.C. 2929.14(D)(1)(b), only one three-year term of actual incarceration may be imposed when it is determined that the acts giving rise to the convictions were committed "as part of the same act or transaction." The Supreme Court of Ohio has defined "transaction" as a "series of continuous acts bound together by time, space and purpose, and directed toward a single objective." State v.Wills (1994), 69 Ohio St.3d 690, 691 (construing former R.C. 2828.71[B], containing language substantially similar to R.C. 2929.14[D][1][b]. This court, in Jones, supra, determined that the word "transaction" contemplates a series of criminal offenses developing from a single criminal adventure, bearing a logical relationship to one another, and bound together by time, space and purpose directed toward a single objective. Id. Employing this definition, this court held that the imposition of two three-year terms of actual incarceration for separate firearm specifications on two underlying counts of felonious assault was improper where the evidence established that the shootings occurred within seconds of each other and arose out of a single argument. Id. InState v. Williams (May 15, 1997), Franklin App. No. 96APA08-1077, this court applied the Wills definition of "transaction" to a case in which the defendant fired his gun into a car with four occupants, holding that the defendant could be sentenced to only one three-year term of actual incarceration because the underlying felonies of one count of involuntary manslaughter and two counts of attempted involuntary manslaughter were bound together by time, space, and purpose.
 {¶ 28} In this case, the evidence established that defendant fired two shots in rapid succession at an inhabited dwelling in response to the inhabitants' verbal attempts at thwarting an attempted burglary. Defendant contends, and the state concedes, that the three felony convictions arose from a single transaction and, accordingly, pursuant to R.C. 2929.14(D)(1)(b), defendant could be sentenced to only one three-year term of actual incarceration. A review of the transcript of the sentencing hearing suggests that the trial court intended to impose only one three-year term of incarceration for the three firearm specifications. However, the court's journal entry states otherwise. It is well-established that a court of record speaks only through its journal and not by oral pronouncement. State ex rel. Marshal v. Glavas,98 Ohio St.3d 297, 2003-Ohio-857, at ¶ 5. The third assignment of error is well-taken.
 {¶ 29} For the foregoing reasons, the first and second assignments of error are overruled and the third assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is hereby affirmed in part and reversed in part, and the cause is remanded to that court for resentencing consistent with this opinion.
Judgment affirmed in part, reversed in part; cause remanded forresentencing.
Bryant and Petree, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.