OPINION
{¶ 1} Defendant-appellant, Marcus L. Burks ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, which convicted appellant, pursuant to a jury trial, of felonious assault and improperly discharging a firearm at or into a *Page 2 
habitation, both with accompanying specifications. The trial court also convicted appellant, pursuant to a bench trial, of having a weapon under disability.
 {¶ 2} The Franklin County Grand Jury indicted appellant on the following charges: (1) felonious assault, a second-degree felony, in violation of R.C. 2903.11; (2) improperly discharging a firearm at or into a habitation, a second-degree felony, in violation of R.C. 2923.161; and (3) having a weapon while under disability, a third-degree felony, in violation of R.C. 2923.13. The charges of felonious assault and improperly discharging a firearm at or into a habitation each contained a three-year prison term firearm specification pursuant to R.C. 2941.145. The charge of improperly discharging a firearm at or into a habitation also carried a five-year prison term specification under R.C. 2941.146, which concerns an individual discharging a firearm from a motor vehicle.
 {¶ 3} The charges against appellant stem from an April 16, 2006 shooting incident. The felonious assault charge involved victim Kwabena Odo. The charge of improperly discharging a firearm at or into a habitation involved the home of Joyce and Billie Joe Armstrong. The Franklin County Grand Jury also indicted appellant's father, Freddie L. Burks ("Freddie"), on one count of felonious assault with a firearm specification as a result of the incident involving Odo.
 {¶ 4} Appellant pleaded not guilty to the charges and exercised his right to a jury trial on the charges of felonious assault and improperly discharging a firearm at or into a habitation. Appellant waived his right to a jury trial on the having a weapon under disability charge. *Page 3 
 {¶ 5} Plaintiff-appellee, State of Ohio ("appellee"), moved to join the trials of appellant and Freddie; appellant objected to the joinder. The court granted the joinder. Appellant and Freddie each had their own defense counsel.
 {¶ 6} During voir dire, appellant raised an issue under Batson v.Kentucky (1986), 476 U.S. 79. The parties discussed the objection with the trial court:
 [APPELLANT'S COUNSEL]: * * * I'm going to raise a [Batson] objection. I'm concerned that the last four * * * that were disqualified by [appellee] on peremptory challenges were all African American.
 [APPELLEE]: That's not true. The first one was African American and the fourth one was white.
 THE COURT: [Batson] has been raised. Do you have a legitimate cause? We have black defendants and you've kicked off — three of your four challenges were African American. Do you have a basis for those under [Batson] versus Kentucky?
 [APPELLEE]: Your Honor, as to which one?
 THE COURT: He's asking for a — the last [prospective juror Bynum].
 [APPELLEE]: * * * [S]he is a minister. That's why I want to kick her off. I have had situations where other colleagues have had ministers on the jury and it has not gone well. That's my reason for her.
 THE COURT: Okay. That's why the challenge was raised. You're on notice that any time you remove somebody of the African-American persuasion that we'll have a [Batson] challenge and you'll have to specify why. You know that?
 [APPELLEE]: Right.
 THE COURT: Anything else * * * for the record?
 [APPELLANT'S COUNSEL]: No, just making the record. *Page 4 
(Vol. II Tr. 225-226.)
 {¶ 7} During trial, witnesses for appellee, including Odo and Joyce and Billie Joe Armstrong, testified that, on April 16, 2006, Freddie fired a gun at Odo while Odo was in the street. Witnesses also testified that, immediately after the incident with Freddie, appellant got in a truck, drove toward Odo, and, while Odo was outside the Armstrong house, fired a gun at Odo. According to Joyce and Billie Joe Armstrong, the bullet from appellant's gun went through a trash can and hit a wall of the Armstrong house. The trial court admitted into evidence a photograph that Joyce Armstrong verified at trial depicted the trash can hit by the bullet.
 {¶ 8} Columbus Police Detective Thomas Burton photographed the trash can after the incident. Appellee asked Detective Burton to verify if the condition of the trash can established that it was struck by a bullet. Detective Burton testified that he could not be certain.
 {¶ 9} Joyce Armstrong testified that appellant told her that he was sorry for "shooting at [her] house." (Vol. II Tr. 346.) Thereafter, upon recessing for the day, the trial court asked appellee's counsel: "[W]ould you care to explain to me this little surprise with this statement made by [appellant] that wasn't given to [appellant] in discovery?" (Vol. II Tr. 356.) Appellee's counsel responded that he had obtained the statement through phone conversations with Joyce Armstrong and asserted that the discovery rules did not require disclosure of the statement.
 {¶ 10} The next day, the parties again discussed the issue of appellant's statement to Joyce Armstrong. Appellant's counsel moved for a mistrial, and the trial court overruled the motion. Appellant's counsel then asked the trial court to strike Joyce *Page 5 
Armstrong's testimony, but the court declined. In discussing the issue, the trial court noted that appellee did not violate the discovery rules. The court also recognized that appellant's counsel failed to make a contemporaneous objection to the testimony.
 {¶ 11} Next, Richard Ortiz from the Columbus City Attorney's Office mediation program testified that Odo requested mediation with Freddie and appellant. The mediation had been scheduled for April 19, 2006, and the request likely had been initiated approximately two weeks earlier. Ortiz testified that the program allows for the mediation between "people who are * * * having issues with neighbors." (Vol. IV Tr. 510.)
 {¶ 12} Thereafter, appellee rested its case. Appellant moved for acquittal under Crim. R. 29. The trial court denied the motion upon agreeing with appellee that sufficient evidence existed to allow the jury to consider the charges of felonious assault and improperly discharging a firearm at or into a habitation.
 {¶ 13} In his defense, Freddie called Willie Willis to testify. Willis testified that he talked to Odo immediately after the shooting. According to Willis, Odo told Willis that he had just had a "shoot-out" with Freddie. (Vol. V Tr. 690.)
 {¶ 14} Freddie also called Billy Horton, who lives on the street where the shooting occurred. Horton testified that he heard gunshots and saw a man with dreadlocks, identified as Odo, running with a gun and through the Armstrong home. When questioned by appellant's counsel, Horton testified that he did not see appellant's truck come down the street at that time.
 {¶ 15} Freddie testified on his own behalf, as follows. Freddie encountered Odo on April 16, 2006. Odo called Freddie "some bad names." (Vol. V Tr. 738.) Odo also *Page 6 
said, "I'll do this to you, sucker." (Vol. V Tr. 738.) Odo then fired a pistol, but the shot did not hit Freddie. In response, although he was not trying to shoot Odo, Freddie fired his gun in the air to "let [Odo] know I would fire mine, too." (Vol. V Tr. 739.) After the incident, Odo fled to the Armstrong house. Freddie did not see appellant drive down the street when Odo fled to the Armstrong house.
 {¶ 16} Thereafter, appellant's counsel rested his case without presenting any evidence.
 {¶ 17} The jury found Freddie not guilty on the single charge against him, i.e., felonious assault. However, the jury found appellant guilty of the charges of felonious assault and improperly discharging a firearm at or into a habitation; the jury also found appellant guilty of the accompanying specifications. The trial court found appellant guilty of having a weapon under disability due to appellant's prior conviction of drug abuse under R.C. 2925.11.
 {¶ 18} Subsequently, the trial court held a sentencing hearing. At the hearing, Freddie made the following comments:
 * * * [T]he evidence against [appellant] was not presented to this Court, plus he didn't get a chance to testify. And all of the people that testified against him, I have evidence that I can prove to the Court that they all came in here lying.
 * * *
 * * * I have [proof that] five years ago [Billie Joe] Armstrong lied on me, said his house was shot up, I have proof, pictures, of the Detective Day went to serve his house where he and his sons were shooting at each other and fighting all the time. They did not find one bullet at Mr. Armstrong's residence. Have they ever found one yet? They come out, remove my weapon or his weapon because he didn't fire any *Page 7 
at them. And they was lying to everyone that lied to the police department is lying.
 * * * [Joyce] Armstrong come here and testified before the Court that she had been to church that Sunday morning the incident happened, between then and now it is not a church in Columbus, Ohio that Ms. Armstrong attended and went to and I can prove that. And * * * Ms. Armstrong come in here and told a lie about the basket that they had on the porch, they haven't found anything, the evidence that they presented to the Court was wrong and I can prove this * * *
(June 18, 2007 Hearing Tr. 6-7.) Appellant also stated during the sentencing hearing that he was not in the Armstrongs' neighborhood when the shooting occurred.
 {¶ 19} The trial court announced the following sentence at the hearing:
 * * * [T]he appropriate sentence in this matter on Count 1 [felonious assault] and 2 [improperly discharging a firearm at or into a habitation], eight year sentence on each [of] those are [to] run concurrent to each other, but * * * consecutive to [a] five year gun specification.
 As I read the statute, I can't give him the five and the three [on the separate specifications]. So the five year gun specification as the jury found him guilty. I found you guilty of the weapons under disability [and] your sentence on that will be four years that will run consecutive. So that's a total of 17 years. * * *
(June 18, 2007 Hearing Tr. 8.)
 {¶ 20} Thereafter, the trial court issued the following sentencing entry:
 The Court hereby imposes the following sentence: EIGHT (8) YEARS as to Count One [felonious assault]; EIGHT (8) YEARS as to Count Two [improperly discharging a firearm at or into a habitation], plus an additional mandatory FIVE (5) YEARS actual incarceration for the firearm specification; and FOUR (4) YEARS as to Count Three [having a weapon under disability] * * *. Counts One and Two to be served concurrently with each other and consecutive to Count Three and the three-year firearm specification, for a total of SEVENTEEN (17) YEARS. *Page 8 
 {¶ 21} Appellant appeals, raising six assignments of error:
 ASSIGNMENT OF ERROR NO. I
 THE TRIAL COURT ERRED BY NOT PROPERLY CONDUCTING AN ANALYSIS OF THE PROSECUTOR'S EXPLANATION FOLLOWING A Batson v. Kentucky (1986), 476 U.S. 79, OBJECTION DURING VOIR DIRE.
 ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED BY FAILING TO GIVE A LIMITING INSTRUCTION OR OTHERWISE STRIKING THE TESTIMONY OF A WITNESS THAT ALLEGED AN ADMISSION OF GUILT BY THE DEFENDANT.
 ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ERRED BY FAILING TO GRANT THE DEFENDANT'S RULE 29 MOTION THAT THE FELONY CHARGES AGAINST THE DEFENDANT WERE MUTUALLY EXCLUSIVE.
 ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT ERRED BY ALLOWING THE CONVICTION ON A FIREARM SPECIFICA[TI]ON AND SENTENCING UNDER R.C. 2923.191 [sic].
 ASSIGNMENT OF ERROR NO. 5
 THE TRIAL COURT ERRED BY FAILING TO GRANT A SEPARATE TRIAL.
 ASSIGNMENT OF ERROR NO. 6
 THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 22} Appellant's first assignment of error concerns the objection that appellant's counsel raised under Batson. In Batson, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution proscribes a prosecutor from *Page 9 
using racially motivated peremptory challenges to exclude jurors. Id. at 89. Batson established a three-step test to analyze claims of racial motivation in peremptory challenges. Id. at 94-98. First, the party making the objection must make a prima facie showing of discrimination, e.g., that the defendant is a member of a cognizable racial group and the prosecutor exercised a peremptory challenge to remove a member of the defendant's race. Id. at 96. Second, upon such a prima facie showing, the party subject to the objection must give a neutral explanation for the challenge. Id. at 97. Third, the trial court must determine if the party making the objection established purposeful discrimination. Id. at 98. In doing so, the trial court must decide whether the stated neutral explanation is credible or is a pretext for unconstitutional discrimination. Hernandez v. New York (1991),500 U.S. 352, 363-364; State v. Gowdy, 88 Ohio St.3d 387, 393, 2000-Ohio-355.
 {¶ 23} Here, appellant, an African American, contends that the trial court failed to determine if the prosecutor's explanation for excluding Bynum, also an African American, was credible or a pretext. Appellant's argument concerns the third step of the Batson test. Because the trial court's conclusions in this third step "`largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.'" Hernandez at 364, quoting Batson at 98, fn. 21;Gowdy at 393-394. We cannot disturb these conclusions unless convinced that the trial court's determination was clearly erroneous.Hernandez at 369; Gowdy at 394.
 {¶ 24} Here, the trial court recognized its duty to consider the propriety of appellee's explanation for excluding Bynum. In particular, when appellant's counsel *Page 10 
raised the Batson challenge, the trial court indicated the need for appellee to provide a "legitimate" explanation for the peremptory in accordance with Batson. (Vol. II Tr. 226.)
 {¶ 25} Occupation is a race neutral reason for excluding a juror. SeePeople v. Hope (Ill. 1995), 168 Ill.2d 1, 21. Thus, there was nothing inherently discriminatory in appellee's reason for excluding Bynum. In accordance with Hernandez and Gowdy, we emphasize the trial court's optimal position to assess the credibility of appellee's counsel in asserting his reasons for excluding Bynum. See Hope at 21-22. In this regard, pursuant to Hernandez and Gowdy, we find nothing clearly erroneous about the trial court accepting appellee's explanation for excluding Bynum due to her being a minister.
 {¶ 26} Accordingly, we conclude that the trial court did not err by overruling the Batson challenge that appellant's counsel raised against appellee excluding Bynum. Therefore, we overrule appellant's first assignment of error.
 {¶ 27} Appellant's second assignment of error concerns Joyce Armstrong's testimony that appellant told her that he was sorry for shooting at her house. Appellant argues that, because appellee failed to disclose the statement during discovery, the trial court erred by not striking the testimony from the record and not instructing the jury to disregard the testimony. We disagree.
 {¶ 28} Crim. R. 16(B)(1)(a) governs the prosecution's duty to disclose to the defense a defendant's statements and states:
 * * * Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, *Page 11 
the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 (i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;
 (ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;
 (iii) Recorded testimony of the defendant or co-defendant before a grand jury.
 {¶ 29} However, Crim. R. 16 does not require the prosecution to disclose during discovery a defendant's inculpatory statement to a non-law enforcement third party. State v. Collier (Feb. 18, 1997), Butler App. No. CA96-03-059. Thus, Crim. R. 16 did not require appellee to disclose the inculpatory statement appellant made to Joyce Armstrong and Joyce related to appellee's counsel. Therefore, the trial court did not err by failing to strike the testimony or failing to instruct the jury to disregard it. Accordingly, we overrule appellant's second assignment of error.
 {¶ 30} In his third assignment of error, appellant argues that, under R.C. 2941.25, the trial court erred by convicting him of both felonious assault and improperly discharging a firearm at or into a habitation. We disagree.
 {¶ 31} Pursuant to R.C. 2941.25:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the *Page 12 
indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Here, appellant argues against his convictions for both felonious assault and improperly discharging a firearm at or into a habitation by claiming that they are allied offenses of similar import under R.C. 2941.25.
 {¶ 32} R.C. 2941.25 requires a two-step analysis. State v.Cabrales,____ N.E.2d ____, 2008 WL 1700206, 2008-Ohio-1625, ¶ 14. According to the Supreme Court of Ohio:
 * * * "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." * * *
(Emphasis omitted.) Cabrales at ¶ 14, quoting State v. Blankenship
(1988), 38 Ohio St.3d 116, 117. If, under the first step, the offenses under review are of dissimilar import, the court's inquiry ends and multiple convictions are permitted. State v. Ranee, 85 Ohio St.3d 632,636, 1999-Ohio-291. In addition, with R.C. 2941.25, the Supreme Court of Ohio "requires courts to compare the elements of offenses in the abstract, i.e., without considering the evidence in the case, but does not require an exact alignment of elements." Cabrales at ¶ 27.
 {¶ 33} In State v. Gray, Franklin App. No. 04AP-938, 2005-Ohio-4563, ¶ 22, we recognized that: *Page 13 
 * * * R.C. 2923.161 [improperly discharging a firearm at or into a habitation] basically applies when a firearm is discharged at a specific structure or in a prohibited area, regardless of the presence of people.
 R.C. 2903.11 [felonious assault] applies when a person knowingly causes or attempts to cause physical harm to another. The crime can be committed anywhere. * * *
 {¶ 34} Thus, in Gray, we held that felonious assault and improperly discharging a firearm at or into a habitation are not allied offenses of similar import because the commission of one offense can occur without commission of the other. Id. at ¶ 24. Accordingly, we concluded that, under R.C. 2941.25, a person could properly be convicted of both offenses. Gray at ¶ 24.
 {¶ 35} Nevertheless, appellant argues that Gray precludes appellant from being convicted of both felonious assault and improperly discharging a firearm at or into a habitation. Specifically, appellant relies on the following statement in Gray:
 * * * [T]he appellant can be charged and convicted of discharging a firearm into a habitation and also for felonious assault if there are people inside the habitation at the time of the shooting. If none of the victims had been inside the house at the time the appellant shot the window, then he could only have been convicted of R.C. 2923.161. * * *
Gray at ¶ 22. Appellant notes that, here, he fired the shot while Odo was outside the Armstrong house and, therefore, pursuant to this statement in Gray, he could not be convicted of both felonious assault and improperly discharging a firearm at or into a habitation.
 {¶ 36} We reject appellant's interpretation of Gray. The purpose of the quoted statement was to explain our conclusion that, under a review of both crimes' elements in the abstract, felonious assault and improperly discharging a firearm at or into a *Page 14 
habitation are dissimilar and not allied offenses of similar import. It was not to preclude convictions on both charges if the victim is standing outside the house. Thus, appellant erroneously relies onGray.
 {¶ 37} We conclude that R.C. 2941.25 did not preclude the trial court from convicting appellant of both felonious assault and improperly discharging a firearm at or into a habitation. Therefore, we overrule appellant's third assignment of error.
 {¶ 38} Appellant's fourth assignment of error concerns the trial court's decision to sentence appellant to one five-year prison term on the R.C. 2941.146 specification in addition to a prison term on the R.C. 2923.161 conviction to which the specification attached. The judgment entry refers to a sentencing on both the five-year and three-year firearm specifications. However, the trial court actually imposed a sentence only on the five-year specification. Appellant argues that the trial court could not properly sentence appellant in this manner because firearm use was an element to both the five-year firearm specification and the underlying charge. We disagree.
 {¶ 39} Appellant did not raise this issue to the trial court. Therefore, appellant has forfeited all but plain error. According to the plain error doctrine enunciated in Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Under the plain-error standard:
 * * * First, there must be an error, i.e., a deviation from a legal rule. * * * United States v. Olano (1993), 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508, 518 *Page 15 
(interpreting Crim. R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]). Second, the error must be plain. To be "plain" within the meaning of Crim. R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * [S]ee, also, Olano, 507 U.S. at 734, 113 S.Ct. at 1777, 123 L.Ed.2d at 519 (a plain error under Fed.R.Crim.P. 52[b] is "`clear' or, equivalently, `obvious'" under current law). Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. * * *
Id.
 {¶ 40} In addition, according to the Supreme Court of Ohio:
 Even if a forfeited error satisfies [the above noted] three prongs [of the plain-error doctrine], Crim. R. 52(B) does not demand that an appellate court correct it. Crim. R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them. * * *
Barnes at 27; see, also, State v. Martin, 103 Ohio St.3d 385,2004-Ohio-5471, ¶ 52 (Moyer, C.J., concurring) (recognizing that "[e]ven if the defendant establishes that plain error affected his substantial rights, the appellate court need not necessarily reverse the judgment of the trial court"). Thus, the Supreme Court of Ohio has "admonish[ed] courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"Barnes at 27, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Reversing on plain error without considering such exceptional circumstances "`encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'" See Johnson v.United States (1997), 520 U.S. 461, 470, quoting Traynor, The Riddle of Harmless Error (1970) 50. *Page 16 
 {¶ 41} Here, appellant relies on State v. Elko, Cuyahoga App. No. 83641, 2004-Ohio-5209. In Elko, a trial court sentenced a defendant, in pertinent part, to one count of improperly discharging a firearm at or into a habitation, pursuant to R.C. 2923.161, and an accompanying firearm specification pursuant to R.C. 2941.145. Elko at ¶ 9. The Eighth District Court of Appeals concluded that the trial court erred in imposing that sentence. Id. at ¶ 95. The court explained: "R.C. 2923.161
specifically requires that a firearm be used to commit the crime; therefore, we agree with appellant that a firearm is an element of the underlying offense, and it was error for him to have been convicted and sentenced to a three-year firearm specification." Elko at ¶ 95.
 {¶ 42} However, we decline to follow Elko because Ohio's felony sentencing laws required the trial court to sentence appellant to five years imprisonment on the R.C. 2941.146 specification in addition to the sentence imposed on the underlying R.C. 2923.161 conviction. R.C. 2929.14(D)(1)(c) states, in pertinent part:
 * * * [I]f an offender who is convicted of or pleads guilty to a violation of section 2923.161
of the Revised Code * * * also is convicted of or pleads guilty to a specification of the type described in section 2941.146 of the Revised Code that charges the offender with committing the offense by discharging a firearm from a motor vehicle * * *, the court, after imposing a prison term on the offender for the violation of section 2923.161 of the Revised Code * * * shall impose an additional prison term of five years upon the offender * * *.
 {¶ 43} In addition, R.C. 2929.14(E)(1)(a) states, in pertinent part:
 * * * [I]f a mandatory prison term is imposed upon an offender pursuant to division (D)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle * * * the offender shall serve any mandatory prison term imposed * * * consecutively to * * * any prison term imposed for the underlying felony * * * *Page 17 
 {¶ 44} On these grounds, we conclude that the trial court did not commit error, let alone plain error, by sentencing appellant to a five-year prison term on the R.C. 2941.146 specification in addition to a prison term on the R.C. 2923.161 conviction to which the specification attached. In its brief, appellee asserts that the trial court erred by not also imposing a consecutive three-year prison sentence on the R.C. 2941.145 specification. However, that claimed error is not subject to review in this appeal because appellant did not raise the issue, and appellee filed no cross-appeal. See State v. Hairston, Franklin App. No. 07AP-160, 2007-Ohio-5928, ¶ 40. For all these reasons, we overrule appellant's fourth assignment of error.
 {¶ 45} In his fifth assignment of error, appellant argues that the trial court erred by joining the trials of appellant and Freddie pursuant to appellee's motion. We disagree.
 {¶ 46} Under Crim. R. 13:
 The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.
 {¶ 47} In this regard, Crim. R. 8(B) states:
 Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count. *Page 18 
 {¶ 48} Here, before trial, appellant objected to the trial court's decision to join the trials. On appeal, appellant argues that the technicalities of Crim. R. 8(B) and 13 precluded the joinder because appellant and Freddie "did not participate in the same series of acts constituting an offense or the same course of criminal conduct." However, the facts establish otherwise, given that the April 16, 2006 incident stemmed from appellant shooting Odo shortly after his father, Freddie, shot Odo, and given that the shooting incident occurred in the midst of Odo seeking mediation to resolve a dispute with both appellant and Freddie. Thus, we find no misjoinder under Crim. R. 8(B) and 13.
 {¶ 49} On appeal, appellant argues that the joinder prejudiced him. Crim. R. 14 provides for relief from prejudicial joinder by providing, in pertinent part:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. * * *
 {¶ 50} The record is devoid of evidence indicating that appellant specifically requested a severance pursuant to Crim. R. 14. Regardless, even construing appellant's objection to the joinder as a Crim. R. 14 severance request, we note that appellant forfeited all but plain error on the Crim. R. 14 severance issue because, at the close of appellee's case-in-chief or at the conclusion of all evidence at trial, appellant did not renew an objection to the trial court's failure to sever the trial. See State v. Williams, Franklin App. No. 02AP-730, 2003-Ohio-5204, ¶ 29; Crim. R. 52(B); Barnes at 27. *Page 19 
 {¶ 51} In accordance with Crim. R. 14, a defendant must affirmatively show prejudice from a trial court's refusal to sever a joint trial.State v. Torres (1981), 66 Ohio St.2d 340, 343. Here, appellant argues that "[t]he evidence of Freddie Burks' confrontation with Mr. Odo was prejudicial to [appellant] as it made it more likely that the Jury would conclude that [appellant] was involved because his father was involved." However, appellant's argument amounts to nothing more than speculation. Indeed, appellant's argument is incongruous because Freddie's testimony tended to negate appellee's testimony that appellant was present for the April 16, 2006 shooting. Likewise, by arguing that the jury convicted appellant because Freddie was also involved in the April 16, 2006 shooting, appellant overlooks the fact that the jury acquitted Freddie of any wrongdoing in the shooting incident. Thus, appellant's speculation does not rise to the level of an affirmative showing of prejudice, as required in Torres. See State v. Massey (Nov. 28, 2000), Franklin App. No. 99AP-1355; State v. Jones (Nov. 29, 1988), Pickaway App. No. 87 CA 9. Therefore, we conclude that the trial court did not commit error, let alone plain error, by not severing the joint trial of Freddie and appellant. Accordingly, we overrule appellant's fifth assignment of error.
 {¶ 52} Lastly, in his sixth assignment of error, appellant argues that his trial counsel rendered ineffective assistance. We disagree.
 {¶ 53} The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and *Page 20 
deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 54} A properly licensed attorney is presumed competent. State v.Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 88, citing Vaughn v.Maxwell (1965), 2 Ohio St.2d 299, 301. Moreover, there is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland at 689. In matters regarding trial strategy, we will generally defer to defense counsel's judgment.State v. Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104; see, also,State v. Carpenter (1996), 116 Ohio App.3d 615, 626, citingBradley at 144 (holding that we are to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). We will only reverse on trial strategy grounds if defense counsel's trial strategy deviated from the standard of reasonableness. State v. Burgins (1988),44 Ohio App.3d 158, 160; State v. Newsome, Ashtabula App. No. 2003-A-0076, 2005-Ohio-3775, ¶ 8.
 {¶ 55} Here, appellant argues that his trial counsel was ineffective for not contemporaneously objecting to Joyce Armstrong testifying that appellant admitted to shooting her house. As we indicated above, appellant asserts that the testimony was subject to being stricken from the record and not considered by the jury because appellee failed to disclose the admission during discovery. However, we concluded that Crim. R. 16 did not require appellee to disclose the admission during discovery, and we *Page 21 
concluded that the trial court did not err by failing to strike the admission from the record or by failing to instruct the jury to disregard it. Therefore, we conclude that appellant's counsel did not render ineffective assistance by failing to contemporaneously object to Joyce Armstrong's testimony. Strickland at 694.
 {¶ 56} Next, appellant argues that his trial counsel was ineffective for not objecting to the trial court sentencing appellant on the R.C. 2941.146 specification in addition to the underlying R.C. 2923.161
conviction. However, we have concluded that the trial court did not err by imposing that sentence, and we conclude that appellant's counsel did not render ineffective assistance by not objecting to the sentence.Strickland at 694.
 {¶ 57} Appellant also argues that his counsel was ineffective for limiting his Batson objection to appellee's peremptory challenge on Bynum and not objecting to appellee's other peremptory challenges on African American prospective jurors. Because appellant's counsel failed to raise a Batson objection to appellee's other peremptory challenges, the record includes no discussion of appellee's basis for making those challenges. Therefore, from this record, we cannot determine whether, pursuant to Batson, appellee had race-neutral explanations for the peremptory challenges and, if so, whether the trial court could have properly accepted such explanations as credible and not a pretext for racial discrimination. We do not presume prejudice from a trial counsel's failure to raise a Batson challenge, and, as here, without an adequate record, we cannot properly consider on direct appeal a claim of ineffective assistance of counsel for a trial counsel's failure to raise a Batson objection. See State v. Belcher (Sept. 15, 1987), Franklin App. No. 86AP-982 (declining to consider whether a trial *Page 22 
counsel's failure to timely raise a Batson issue constituted ineffective assistance of counsel upon recognizing that the evidentiary basis for the ineffective assistance claim depended on evidence outside the record).
 {¶ 58} Lastly, appellant argues that his counsel failed to present an effective defense on appellant's behalf. In making that argument, appellant relies on Freddie's statements at the sentencing hearing. In particular, Freddie criticized appellant's counsel for not having appellant testify. Yet, the decision to testify on one's own behalf is ultimately for the defendant to make. Jones v. Barnes (1983),463 U.S. 745, 751. Here, the record contains no indication that appellant wanted to testify and that his counsel prohibited him from doing so.
 {¶ 59} In addition, Freddie claimed that he had evidence that Billie Joe Armstrong previously fabricated a story to implicate Freddie in shooting at the Armstrongs' home. However, any extrinsic evidence Freddie had to demonstrate such a claim would have been inadmissible under Evid. R. 608(B), which states, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence." See, also,State v. Cureton, Medina App. No. 01CA3219-M, 2002-Ohio-5547, ¶ 36 (concluding that Evid. R. 608[B] prohibited a party from using extrinsic evidence of specific instances of a witness's conduct to impeach the witness's testimony).
 {¶ 60} We note that, under Evid. R. 608(B), a party may, on cross-examination, ask a witness about specific instances of the witness's conduct when the inquiry concerns the witness's character for untruthfulness. See, also, Cureton at ¶ 36 *Page 23 
(concluding that Evid. R. 608[B] allowed a party to ask a witness on cross-examination about specific instances of the witness's conduct because the questions concerned the witness's character for untruthfulness). Thus, arguably, if the proper foundation had been present, appellant's counsel could have attacked Billie Joe Armstrong's credibility by asking the witness on cross-examination if he lied about Freddie previously shooting at the witness's house. However, we do not find any prejudice from appellant's counsel not asking that question because we can only speculate as to how Billie Joe Armstrong would have answered the question, and if the witness would have denied the accusation, appellant's counsel would have been limited to the answer. See Cureton at ¶ 36. Second, even assuming Billie Joe Armstrong's credibility would have been impeached through an admission on cross-examination to fabricating the claim against Freddie, we still find no prejudice from appellant's counsel not asking about the fabrication because the jury could have properly convicted appellant based on other witnesses' verification of appellant's involvement in the April 16, 2006 shooting incident. Strickland at 694.
 {¶ 61} Next, Freddie claimed that he had evidence that contradicted Joyce Armstrong's testimony that she went to church before the April 16, 2006 shooting incident. Whether Joyce Armstrong went to church before the April 16, 2006 incident is a collateral matter, which we have previously defined as facts "`outside the controversy[ ] or * * * not directly connected with the principal matter or issue on dispute.'" SeeState v. Smith, Franklin App. No. 04AP-726, 2005-Ohio-1765, ¶ 39, quoting Black's Law Dictionary (6th Ed. 1990) 262. Thus, any extrinsic evidence Freddie had on the issue would have been inadmissible because a party may not introduce *Page 24 
extrinsic evidence of contradiction to prove collateral matters.Smith at ¶ 39. Moreover, we do not find any prejudice from appellant's counsel's failure to cross-examine Joyce Armstrong about her not going to church before the April 16, 2006 shooting incident because, first, we can only speculate as to how Joyce Armstrong would have answered the question, and if the witness would have denied the accusation, appellant's counsel would have been limited to the answer. See In reMichael (1997), 119 Ohio App.3d 112, 126. Second, even if Joyce Armstrong admitted on cross-examination that she did not go to church before the April 16, 2006 shooting incident, we still find no prejudice from appellant's counsel not asking about the issue because the issue is merely collateral to whether appellant was involved in the shooting.Strickland at 694.
 {¶ 62} Next, Freddie claimed that Joyce Armstrong was lying about the trash can on the porch. Presumably, Freddie is referring to Detective Burton's inability to testify that the condition of the trash can verifies that a bullet struck it. This evidence was presented to the jury, and the jury convicted appellant in the April 16, 2006 shooting. Freddie's statement does not establish appellant's counsel's ineffectiveness.
 {¶ 63} Lastly, appellant notes that his counsel provided no alibi evidence to demonstrate, as he contended at the sentencing hearing, that he was not in the Armstrongs' neighborhood during the April 16, 2006 shooting incident. However, appellant's counsel attempted to demonstrate appellant's absence from the shooting incident when he asked Freddie and Horton if they saw appellant's truck in the area after the incident between Freddie and Odo. Furthermore, the record does not indicate that appellant had other alibi evidence. Therefore, we cannot conclude, on this record, that appellant had other alibi witnesses that appellant's counsel failed to present. See *Page 25 Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199 (holding that a defendant claiming error on appeal has the burden of proving the error by reference to matters in the appellate record).
 {¶ 64} For all these reasons, we conclude that appellant's counsel did not render ineffective assistance. Accordingly, we overrule appellant's sixth assignment of error.
 {¶ 65} In summary, we overrule appellant's first, second, third, fourth, fifth, and sixth assignments of error. We affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 McGRATH, P.J., and BROWN, J., concur. *Page 1