[Cite as *State v. Ribbans*, 2014-Ohio-5528.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                              :

      Plaintiff-Appellee,                          :

                                          No. 14AP-365

v.                                                              :          (C.P.C. No. 12CR-4554)

Bruce D. Ribbans,                                      :                (REGULAR CALENDAR)

      Defendant-Appellant.                         :

---

D E C I S I O N

Rendered on December 16, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Brian J. Rigg*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Bruce D. Ribbans, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty of one count of aggravated burglary, one count of felonious assault, and one count of violation of a protection order, all with accompanying firearm specifications. Because sufficient evidence and the manifest weight of the evidence support appellant's convictions, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed September 7, 2012, the state charged appellant with one count of aggravated burglary in violation of R.C. 2911.11, a first-degree felony, one count of felonious assault in violation of R.C. 2903.11, a second-degree felony, and one count of violating a protection order or consent agreement in violation of R.C. 2919.27, a third-degree felony. All three of the charges contained accompanying firearm specifications,

and all of the charges related to the events on August 31, 2012 at the home of Elizabeth Jean Hood.  Appellant entered a plea of not guilty, and the case proceeded to trial.

{¶ 3}   At the jury trial, the state presented the testimony of Elizabeth Jean Hood. Ms. Hood testified that she met appellant in 1995, and the two began a romantic relationship.  In 2000, appellant moved into Ms. Hood's house.  Ms. Hood testified that the relationship ended in June 2012 and that appellant moved out of her house at that time. When the relationship ended in June 2012, Ms. Hood obtained a civil protection order against appellant. The protection order was still in effect on August 31, 2012.

{¶ 4}   Bradley Hood, Ms. Hood's 22-year-old son, testified that, on the afternoon of August 31, 2012 around 4:30 p.m., he walked into the garage attached to his house and "found [appellant] standing there with a gun."  (Tr. 113, R. 233.)  Bradley said appellant was wearing plastic gloves, a hat, and a black T-shirt, and that appellant asked him to "sit down and be quiet."  (Tr. 113, R. 233.) Bradley obeyed "because [appellant] was holding a gun." (Tr. 113, R. 233.)  According to Bradley's testimony, appellant asked him to get his mother so that appellant could talk to her, which Bradley did not do.  Even though appellant said he was not there to hurt Bradley's mother, Bradley did not believe him "because he had a gun." (Tr. 114, R. 234.)  Bradley said appellant asked how he was doing and how school was going. He also told Bradley "how much [appellant] missed [Bradley's] mom."  (Tr. 147, R. 267.)  Appellant told Bradley he had been sitting in the garage for an hour before Bradley arrived waiting for Bradley's mother to walk in.  Bradley testified that he was in the garage with appellant for an hour and a half and that appellant pointed the gun at Bradley the  entire time.  Bradley further testified that appellant told Bradley that, "if [he] made noise, [appellant] would shoot [Bradley], said if [Bradley] tried to run away, [appellant] would shoot [him]."  (Tr. 144, R. 264.)

{¶ 5}   Bradley explained that, although the garage is attached to the house, there is no door providing a direct entrance into the house.  There was an exterior entrance to the garage that was next to the front door to the house.  Eventually, appellant told Bradley to walk to the front door and try to open it.  Bradley walked to the front door and tried to open it, but it was locked.  He started to walk back toward the garage, but instead of reentering the garage with appellant, Bradley testified that he slammed the garage door shut, "jumped out of the way and took off running around the back of the house."  (Tr. 115, R. 235.)  As he was running, Bradley heard two gunshots.  He made it to the back of the

house, entered through the glass door leading to the deck, and screamed to his mother to warn her. Bradley testified that he yelled, "Bruce is here. He has a gun. He shot at me. Call 911." (Tr. 115, R. 235.)

{¶ 6} Bradley and his mother went upstairs into Ms. Hood's room with their family dog and barricaded the bedroom door. They remained on the phone with the 911 dispatcher the entire time they were in the bedroom and until police arrived, which Bradley testified only took three or four minutes. While they were barricaded in the bedroom, Bradley stated that they heard another gunshot and they heard the glass from the back sliding door shatter. Once the police were on the scene, the officers escorted Bradley and Ms. Hood out of the house and into a police van across the street where they waited until the situation was over. Bradley stated that, after approximately three hours, he saw the police escort appellant out of the house.

{¶ 7} Bradley identified photographs taken of the scene of the incident, including photographs of bullet strikes in the garage door and live ammunition lying on the floor. The state also introduced a handwritten letter sent from appellant to Bradley while appellant was in jail, in which appellant wrote: "I never meant to shoot at you. I aimed well behind you." (Tr. 136, R. 256.) In the letter, appellant also offered to pay for the damage to the glass door.

{¶ 8} James Gillespie, a Columbus Police Officer, testified that he responded to Ms. Hood's house on August 31, 2012. When he entered the house, Officer Gillespie saw a blood trail leading to the basement. After he escorted Ms. Hood and Bradley out of the house, Officer Gillespie testified that other officers arrived to secure the lower level of the house.

{¶ 9} Charles Distelhorst, a Columbus Police Officer with the SWAT division, testified that he responded to the incident and first conversed with appellant through the open doorway leading to the basement in Ms. Hood's house. Officer Distelhorst stated that appellant was holding a gun in his mouth or underneath his chin during the negotiations. Appellant asked the SWAT officers several times if they would kill him, but Officer Distelhorst told him they did not want to do that. Eventually, appellant held the gun to the side of his head, and Officer Distelhorst was able to discern the gun was out of bullets. Officer Distelhorst then deployed a Taser on appellant, enabling several other officers to place appellant into handcuffs, pat him down, and walk him out of the house to

the waiting squad cars.  Officer Gillespie waited for the SWAT team to remove appellant from the house, and then Officer Gillespie performed a search incident to arrest of appellant's person revealing a live round of ammunition in appellant's pocket.

{¶ 10} Finally, the state presented the testimony of Russell Henslee, a detective with the Columbus Division of Police, who identified a firearm, a gun magazine, two live rounds of ammunition, a spent shell casing, a black hat, a cell phone, and gloves, all collected from the scene of the incident on August 31, 2012.

{¶ 11} The parties stipulated that the gun recovered from appellant at the scene was operable.  The parties further stipulated that DNA obtained from the gun contained a mixture from which appellant could not be excluded as a contributor, and the DNA obtained from the magazine and glove matched appellant's DNA.

{¶ 12} Appellant testified in his own defense.  According to appellant's testimony, he took a taxi to Ms. Hood's house on August 31, 2012 because he wanted to check on the van he had left at her house after he moved out.  When he arrived, appellant noticed the garage door was open.  Appellant stated that he had left money in an envelope in the garage before he moved out, so he "saw an opportunity to go in and get" it.  (Tr. 296, R. 416.)  Appellant testified that he could not find his money, but he did find the gun. Appellant stated he "did not go [into the garage] armed."  (Tr. 297, R. 417.)  Appellant admitted to wearing gloves in the garage but stated he did so because "[t]he garage is a mess."  (Tr. 302, R. 422.)  Appellant testified that, after Bradley came into the garage, the two of them talked "for a long time about different things, life in general," but that the conversation "didn't have anything to do with the gun or anything."  (Tr. 299, R. 419.) According to appellant, the next thing he knew there was a struggle in which he fell and hit his head. Appellant testified that, if he fired shots at Bradley, he did not do so knowingly.  Further, appellant stated it was not his intention to break into Ms. Hood's house, though he did intend to enter her garage in order to find his money.  Appellant was unsure of whether he shot through the glass of the patio door.

{¶ 13} On cross-examination, appellant agreed that he knew the gun was loaded while he was holding it in the garage.  He agreed that he pointed the gun at Bradley, but stated he did not do so intentionally. Appellant said he shot at Bradley "for effect," but would not agree that he aimed for Bradley.  (Tr. 315-16, R. 435-36.)  Appellant further testified that he was angry while he was inside the garage. He reiterated that he was

unsure of whether he shot through the glass door, but he assumed he did, and he said he fell through the door and into the house.

{¶ 14} The jury returned guilty verdicts as to all counts and specifications. The trial court sentenced appellant to an aggregate prison term of 17 years and journalized appellant's convictions and sentence in an April 4, 2014 judgment entry. Appellant timely appeals.

## II. Assignment of Error

{¶ 15} Appellant assigns the following sole assignment of error for review:

> The verdict is against the sufficiency and manifest weight of the evidence.

## III. Analysis

{¶ 16} In his sole assignment of error, appellant argues that there was insufficient evidence to convict him of aggravated burglary and felonious assault, as well as the accompanying firearm specifications. Appellant further argues that, even if there was sufficient evidence to support his convictions, his convictions were nonetheless against the manifest weight of the evidence. Appellant does not challenge either the sufficiency or the manifest weight of the evidence with regards to his conviction for violation of a protection order.

### A. Sufficiency of the Evidence

{¶ 17} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

#### 1. Aggravated Burglary

{¶ 18} Pursuant to R.C. 2911.11(A)(1) and (2), "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense" if either "[t]he offender inflicts, or attempts or threatens to inflict physical harm on another," or "[t]he offender has a deadly weapon or dangerous ordnance

on or about the offender's person or under the offender's control."  The culpable mental state for aggravated burglary is "purposeful."  *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 44, citing *State v. Conley*, 4th Dist. No. 08CA784, 2009-Ohio-1848, ¶ 40.

{¶ 19} Appellant argues that there was insufficient evidence that he entered Ms. Hood's  garage with the purpose to commit a criminal offense.  Although appellant testified he entered the garage only to retrieve his money and some paperwork he had left behind, the totality of the evidence suggests otherwise. Appellant held Bradley at gunpoint for an hour and a half, admitted he knew he was violating a protection order by being at Ms. Hood's house, shot at Bradley, and entered Ms. Hood's house.  "The jury is free to infer intent from the entire set of circumstances surrounding the commission of the offenses."  *State v. Timmons*, 10th Dist. No. 13AP-1038, 2014-Ohio-3520, ¶ 25, citing *State v. Loughman*, 10th Dist. No. 10AP-636, 2011-Ohio-1893, ¶ 47, citing *State v. Grant*, 67 Ohio St.3d 465, 478 (1993).

{¶ 20} The only conflicting evidence was appellant's self-serving testimony, but "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime."  *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4, citing *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16.  When viewing the evidence in the light most favorable to the state, we conclude the state presented sufficient evidence to establish appellant's intent to commit a criminal offense when he trespassed into Ms. Hood's garage, and, thus, there was sufficient evidence for appellant's aggravated burglary conviction.

### 2. Felonious Assault

{¶ 21} Pursuant to R.C. 2903.11(A)(2), a person is guilty of felonious assault if the person knowingly causes or attempts to cause "physical harm to another * * * by means of a deadly weapon or dangerous ordnance."  Further, R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).

{¶ 22} "Under Ohio law, ' "[e]vidence that a defendant pointed a deadly weapon at another, without further evidence regarding the defendant's intention, is insufficient to sustain a conviction for felonious assault under R.C. 2903.11(A)(2)." ' " *State v. Henderson*, 10th Dist. No. 10AP-1029, 2011-Ohio-4761, ¶ 14, quoting *State v. Mincy*, 1st Dist. No. C-060041, 2007-Ohio-1316, ¶ 66, citing *State v. Brooks*, 44 Ohio St.3d 185 (1989), syllabus. However, " ' "the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use the weapon to cause harm, is sufficient evidence" to sustain a conviction for felonious assault under R.C. 2903.11(A)(2).' " *Henderson*, quoting *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 33, quoting *Mincy* at ¶ 67, quoting *State v. Green*, 58 Ohio St.3d 239 (1991), syllabus. Additionally, "[t]his court has held that an attempt to cause physical harm may be inferred from the act of firing the gun in the direction of an individual." *State v. Gray*, 10th Dist. No. 04AP-938, 2005-Ohio-4563, ¶ 12, citing *State v. Thompson*, 10th Dist. No. 97APA04-489 (Nov. 10, 1997).

{¶ 23} Here, Bradley testified explicitly that appellant threatened to shoot him if he made any noise or tried to run away. Appellant also admitted that he fired the gun in Bradley's direction "for effect" after Bradley fled from the garage. (Tr. 315-16, R. 435-36.) The state also introduced two photographs showing bullet strikes in the garage door near where Bradley had been standing. Appellant argues that his location in the garage would have made it impossible for him to actually shoot Bradley once Bradley ran away. Similar to appellant's argument regarding his aggravated burglary conviction, this is once again an argument that would depend on a favorable evaluation of appellant's testimony which, as we have already noted, is not appropriate for sufficiency-of-the-evidence review. Thus, when viewing the evidence in a light most favorable to the state, we conclude that there was sufficient evidence to support appellant's felonious assault conviction.

### 3. Firearm Specifications

{¶ 24} To the extent appellant also challenges the sufficiency of the evidence as it relates to the firearm specifications attached to his aggravated burglary and felonious assault convictions, that argument also fails.

{¶ 25} Under R.C. 2941.145(A), the trial court shall impose an additional prison term if an indictment specifies that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the

firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Bradley testified that appellant pointed the gun at him the entire time he was in the garage, and appellant admitted to possessing and firing the gun. This was sufficient evidence to sustain the convictions on the firearm specifications associated with each charge.

### B. Manifest Weight of the Evidence

{¶ 26} When presented with a manifest-weight argument, an appellate court engages in a limited reweighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 27} An appellate court considering a manifest-weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 28} Appellant restates much of his argument regarding sufficiency of the evidence for purposes of his manifest-weight argument. Essentially, appellant argues that the jury should have believed his testimony rather than the conflicting testimony of Bradley and the state's other evidence at trial. In light of the evidence discussed above, as

well as the record in its entirety, we do not find that the jury clearly lost its way in concluding that appellant committed the offenses of aggravated burglary and felonious assault when appellant trespassed into Ms. Hood's garage, held Bradley at gunpoint, threatened to shoot Bradley if he fled, then fired the gun in Bradley's direction when Bradley ran from the garage. We agree with the jury's decision to discount appellant's self-serving testimony that he either did not remember firing the gun or did not mean to fire the gun and that his only purpose in entering the garage was to retrieve money. The other evidence at trial suggested otherwise. Therefore, we do not find that appellant's convictions for aggravated burglary and felonious assault are against the manifest weight of the evidence.

{¶ 29} Having concluded that both the sufficiency and manifest weight of the evidence support appellant's convictions of aggravated burglary and felonious assault, we overrule appellant's sole assignment of error.

## IV. Disposition

{¶ 30} Based on the foregoing reasons, the sufficiency of the evidence and the manifest weight of the evidence support appellant's convictions. Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

_____