[Cite as *State v. Meek*, 2017-Ohio-9258.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 16AP-549 |
| v. | : | (C.P.C. No. 14CR-4930) |
| Jonza Meek, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 26, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:**

**On brief:** *Brian J. Rigg*, for appellant. **Argued:**

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Jonza Meek, appeals the July 6, 2016 judgment entry of the Franklin County Court of Common Pleas, convicting him pursuant to a jury verdict and imposing sentence. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} This matter arises out of a robbery which occurred on August 21, 2014 and an incident on August 25, 2014 that resulted in the shooting of J.W., a minor child at the time of the incident. On September 16, 2014, a Franklin County Grand Jury filed an indictment charging appellant with five criminal counts: aggravated robbery, in violation of R.C. 2911.01, a felony of the first degree; felonious assault, in violation of R.C. 2903.11, a felony of the second degree; improperly discharging a firearm at or into a habitation or school safety zone, in violation of R.C. 2923.161, a felony of the second degree; and two counts of having weapons while under disability, in violation of R.C. 2923.13, both

felonies of the third degree.  The count of aggravated robbery was charged with a three-year firearm specification, pursuant to R.C. 2941.145(A); the counts of felonious assault and improperly discharging a firearm were each charged with three- and five-year firearm specifications, pursuant to R.C. 2941.145(A) and 2941.146(A).

{¶ 3}   On July 13, 2015, the matter proceeded to trial by jury. At trial, Shawn Nelms aka "Mook" (hereinafter "Nelms"), testified that in August 2014 he met an individual named Edwin Goins, whom he knew as "Mikey" (hereinafter "Mikey"), at a gas station and sold him drugs.  (Tr. Vol. II at 271.)  Later that same month, Nelms arranged a meeting with Mikey to sell him additional drugs.  Mikey arrived at the meeting with another man, who approached Nelms and pointed a gun at Nelms's face.  Mikey removed Nelms's necklace and took approximately $200 to $300 from Nelms's pockets.  During this confrontation, the man with the gun identified himself to Nelms as "Dewey from Miller."  (Tr. Vol. II at 276.)   After taking Nelms's possessions, Mikey and the other individual left the scene, but later engaged in threatening phone conversations with Nelms.

{¶ 4}   Following this incident, on August 25, 2014, Nelms was near the house of Suntina Ussury, alternatively referred to as his aunt or a family friend, on Hallidon Avenue in Columbus when he received information that persons related to the robbery were on their way to him in a blue Impala.  When he heard that a blue Impala was driving down Hallidon, Nelms ran from his aunt's house to a location behind nearby apartments and attempted to hide.  When the impala drove past, Nelms yelled at a neighbor to "get the kids in the house." (Tr. Vol. II at 281.)  At that point, the Impala pulled up on Leonard Avenue behind the apartments where Nelms was standing.  Nelms witnessed the passenger of the car, the same man who identified himself to Nelms as "Dewey from Miller," hanging out of the car and firing a gun as they drove past.  Nelms ran to his cousin's house, where he learned that J.W. had been shot.

{¶ 5}   Nelms was later interviewed by police regarding the incidents. Nelms testified that, at first, he did not want to cooperate with police.  However, when they returned he identified the shooter from a photo lineup.  At trial, Nelms identified appellant as the shooter.

{¶ 6} Ussury testified she was outside on August 25, 2014 at the time of the incident and witnessed the passenger of the car firing several shots from a gun at Nelms. Ussury saw the passenger riding past her house more than once before the incident on August 25, 2014. In an interview with police following the incident, Ussury expressed hesitation about identifying anyone to police. After further questioning, Ussury identified the individual who shot at Nelms as "Dewey" and stated that a couple of days before the incident "Mike Goins and Dewey had been out there." (Tr. Vol. II at 109.) Ultimately, Ussury identified the shooter from a photo lineup and, at trial, identified the shooter as appellant.

{¶ 7} On August 25, 2014, J.W. was inside her house getting dressed in her bedroom when a bullet flew into her room, pierced her body, and became lodged in her bedroom wall. J.W. walked to her mom's room, T.H., and told her she had been hit. T.H. grabbed J.W. and rushed her outside to the sidewalk, applying pressure to her wounds. Police arrived and secured the scene, followed by paramedics who rushed J.W. to Nationwide Children's Hospital.

{¶ 8} Dr. Payam Saadai, a pediatric surgeon, testified regarding J.W.'s treatment. Dr. Saadai testified J.W. sustained severe injuries, including damage to her lungs, diaphragm, liver, and kidney. J.W. remained in the hospital, including the intensive care unit, for several days following the incident.

{¶ 9} Detective Glenn Bray testified he administered two photo arrays to Nelms. Upon viewing the first array, Nelms stated he thought he could identify the shooter, but had difficulty because the photos were in black and white. When presented with the same array in color, Nelms identified the shooter. Detective Bray also interviewed appellant, who denied involvement and stated he was at a birthday party. Appellant told Detective Bray his nickname was "Dewey" and admitted he knew Nelms.

{¶ 10} Detective Robert Cutshall testified that after appellant was arrested, he interviewed Deweysean Cox, who was also known as "Dewey." Cox denied any involvement with the incident. Detective Cutshall did not place Cox in a photo array.

{¶ 11} Lexus Becker, a friend of appellant's, Sheryl Meek, appellant's mother, and Ethni Smith, appellant's former neighbor, all provided alibi testimony for appellant. Smith testified she was present with appellant on a Friday. Detective Cutshall testified

August 25, 2014 was a Monday. Tatyanna Edwards, the mother of three of appellant's children, testified appellant asked her to be an alibi witness, but she stated she was not present with appellant on the day of the incident.

{¶ 12} On July 14, 2015, appellant filed a waiver of his right to a jury trial on the counts of having weapons while under disability. On July 20, 2015, the jury returned a verdict of guilty on the counts of aggravated robbery, felonious assault, and improperly discharging a firearm, along with all associated specifications.

{¶ 13} On September 16, 2015, appellant filed a motion requesting a new trial, pursuant to Crim.R. 33(A)(2), in which he asserted that on August 6, 2015 appellant's counsel was informed by the office of the Franklin County Prosecutor that two of the state's witnesses had possibly lied while giving testimony in appellant's trial. On October 19, 2015, plaintiff-appellee, State of Ohio, filed a memorandum contra appellant's motion for new trial. On December 31, 2015, appellant filed a supplemental motion for new trial, including an affidavit in support of the motion. On January 5, January 27, and February 25, 2016, the trial court held hearings on appellant's motion for new trial.

{¶ 14} Nelms testified during the motion hearing that appellant was not the person who robbed him on August 24, 2014 and not the person who shot at him on August 25, 2014. Specifically, Nelms testified that he learned from conversations with friends that the person who robbed him and shot at him "was still out there." (Jan. 27, 2016 Tr. at 6.) However, Nelms declined to identify the individuals who gave him this information. Nelms testified he had been informed of the consequences of perjury, but still wished to recant his trial testimony.

{¶ 15} On cross-examination, Nelms testified he did not want to be known as a "snitch" although he denied knowing of any retaliation for being labeled a snitch. The state played a recording of a call between Nelms and A.P., his girlfriend:

> [Nelms]: Do you feel safe now?
>
> [A.P.]: No.
>
> [Nelms]: What you mean no?
>
> [A.P.]: Because I don't get -- I don't understand what's going on.
>
> [Nelms]: What's going on is I took my word back that I said in court. So they charging me, but he is getting out.

[A.P.]: Why would they charge you?

[Nelms]: It don't -- it don't matter, man. It don't matter.

* * *

[Nelms]: There ain't no need for his people or nobody to get in touch with you no more or nothing. When you -- if they -- somebody writes you, tell 'em me and you not together no more, you don't know what's going on.

(Jan. 27, 2016 Tr. at 27-28.)  Nelms, however, denied he was recanting his testimony because A.P. felt she was not safe.  Later, Nelms testified as follows:

[Assistant Prosecutor]: Do you remember telling [A.P.], your girlfriend, don't talk to them anymore, we did what we had to do?

[Nelms]: Yeah.

[Assistant Prosecutor]: What was that, you did what you had to do?

[Nelms]: I told them that he was the wrong guy.

[Assistant Prosecutor]: You took your word back?

[Nelms]: Yeah.

[Assistant Prosecutor]: And now she feels safe?

[Nelms]: Yeah.

(Jan. 27, 2016 Tr. at 38-39.)

{¶ 16} On February 29, 2016, appellant filed a second supplemental motion for new trial.  On March 14, 2016, the state filed a memorandum contra appellant's second supplemental motion for new trial.  On May 26, 2016, the trial court filed an entry denying appellant's motions for new trial.

{¶ 17} On June 30, 2016, the trial court filed an entry reflecting that, following a bench trial on the same day, it found appellant was not guilty of the two counts of having weapons while under disability.  On July 6, 2016, the trial court filed a judgment entry reflecting appellant's convictions and imposing the following sentence: 3 years on the count of aggravated robbery, to be served consecutively to 3 years on the firearm specification on that count; 3 years for the count of felonious assault, to be served concurrently to the sentence for aggravated robbery, with 8 years for the two firearm specifications for that count, to be served consecutively with each other and to the firearm specification for felonious assault; and 3 years for the count of improperly discharging a

firearm, to be served concurrently with the prior counts, with 3 years for the firearm specification for that count, to be served concurrently with the other counts. Thus, appellant was sentenced to a total term of 14 years incarceration.

## II. Assignments of Error

{¶ 18} Appellant appeals and assigns the following three assignments of error for our review:

> [I.] THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL.
>
> [II.] THE VERDICTS OF GUILTY TO FELONIUS ASSAULT, AGGRAVATED ROBBERY, AND DISCHARGING A FIREARM ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [III.] THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION FOR NEW TRIAL.

For ease of discussion, we consider appellant's assignments of error out of order.

## III. Third Assignment of Error—Motion for New Trial

{¶ 19} In his third assignment of error, appellant asserts the trial court erred in denying his motion for new trial.

{¶ 20} Crim.R. 33(A) governs motions for a new trial and provides, in pertinent part:

> A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
>
> * * *
>
> (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

Newly discovered evidence may warrant a new trial in a criminal case if the defendant demonstrates that the new evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

(Quotations omitted.) *State v. Westerfield*, 10th Dist. No. 16AP-85, 2016-Ohio-4633, ¶ 8-13, quoting *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 21, quoting *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

{¶ 21} "A witness's recantation of testimony can be newly discovered evidence if the court finds the new testimony credible and if the new testimony would materially affect the outcome of the trial." *State v. Woodward*, 10th Dist. No. 08AP-1015, 2009-Ohio-4213, ¶ 20, citing *State v. Burke*, 10th Dist. No. 06AP-686, 2007-Ohio-1810, ¶ 18, citing *Toledo v. Easterling*, 26 Ohio App.3d 59 (6th Dist.1985). However, "[r]ecantation by a significant witness does not, as a matter of law, entitle the defendant to a new trial." *Id.*, citing *State v. Walker*, 101 Ohio App.3d 433, 435 (8th Dist.1995). In order to grant a motion for a new trial on the basis of recanted testimony, the court must find that: (1) the recantation is credible, thereby impliedly finding the original testimony was not credible, and (2) there is a strong probability that the new testimony would affect the outcome of the trial. *Id.* at ¶ 22; *Burke* at ¶ 18, quoting *Easterling* at 62, citing *State v. Lopa*, 96 Ohio St. 410 (1917) (" 'The recantation must so affect the character of the evidence that there is a strong probability that a different verdict would result.' "); *State v. Starling*, 10th Dist. No. 01AP-1344, 2002-Ohio-3683, ¶ 13 (finding the "new evidence must, at the very least, disclose a strong probability that it will change the result if a new trial is granted"); *State v. Rossi*, 2d Dist. No. 24740, 2012-Ohio-2545, ¶ 17; *State v. Alexander*, 11th Dist. No. 2011-T-0120, 2012-Ohio-4468, ¶ 24.

{¶ 22} Courts view newly discovered evidence purportedly recanting testimony given at trial with utmost suspicion. *Taylor v. Ross*, 150 Ohio St. 448 (1948), paragraph three of the syllabus (stating that "[r]ecanting testimony ordinarily is unreliable and should be subjected to the closest scrutiny"); *State v. Phillips*, 10th Dist. No. 14AP-362, 2014-Ohio-4947, ¶ 16; *Woodward* at ¶ 21, citing *State v. Jones*, 10th Dist. No. 06AP-62,

2006-Ohio-5953, ¶ 25. "Motions based upon recanted testimony are suspect 'because, "where a witness makes subsequent statements directly contradicting earlier testimony the witness either is lying now, was lying then, or lied both times." ' " *Jones* at ¶ 25, quoting *United States v. Earles*, 983 F.Supp. 1236, 1248 (N.D.Iowa 1997), quoting *United States v. Provost*, 969 F.2d 617, 620 (8th Cir.1992).

{¶ 23} "We apply an abuse of discretion standard when reviewing a trial court's decision on a motion for a new trial under Crim.R. 33." *Westerfield* at ¶ 8, citing *State v. Anderson*, 10th Dist. No. 12AP-133, 2012-Ohio-4733, ¶ 9, citing *State v. Townsend*, 10th Dist. No. 08AP-371, 2008-Ohio-6518. *See Taylor* at paragraph two of the syllabus. An abuse of discretion occurs when a trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 24} In its May 26, 2016 judgment entry denying appellant's motion for new trial, the trial court found that Nelms's trial testimony was "very credible" because he was "candid and non-evasive about his own criminal behavior and confident in his identification of [appellant]." (Decision and Entry at 6.) The court stated that, in his testimony regarding the motion for new trial, Nelms "did not testify that he had lied during the trial, but rather, that he now believed that he was mistaken because he had *heard*, through jail calls with several friends, that the 'real Dewey' was still out there, and that he had *heard* that he had identified the wrong individual." (Emphasis sic.) (Decision and Entry at 6.)

{¶ 25} However, the court found that Nelms refused to identify the individuals who told him he had identified the wrong person. Furthermore, the alleged jail calls during which these conversations took place were never provided to the court. The court also found that several jail calls involving Nelms demonstrated he became "fearful for the safety of himself and his family and fearful of retribution from [appellant] or [appellant's] family and/or friends, and changed his mind on the identification of [appellant]." (Decision and Entry at 7.) The court also noted Nelms testified appellant's girlfriend had been in contact with Nelms's girlfriend, and that appellant's mother and Nelms's mother had been in contact. The court found this was corroborated by Nelms's jail calls and Nelms's testimony that he told his girlfriend not to talk to appellant's family.

{¶ 26} Therefore, the trial court found Nelms's "testimony in the original trial to be very credible, and his testimony in the hearing for a new trial to lack credibility." (Decision and Entry at 8.) Finally, the court found Nelms's testimony would not materially affect the outcome.

{¶ 27} Appellant contends the trial court abused its discretion in denying the motion for new trial because "[t]he fact that one of the state's key witnesses, and the *only* witness linking the [a]ppellant to the aggravated robbery charge, changed his testimony post-trial is material to [a]ppellant's guilt" and, therefore, "creates a strong probability of a different result at trial." (Appellant's Brief at 14.)

{¶ 28} Appellant's argument that Nelms's recantation testimony was material to his conviction neglects the trial court's determination that Nelms's recantation was not credible. The trial court, as the finder of fact on the motion for new trial, was in the best position to judge the credibility of the witness. *See Phillips* at ¶ 15. Furthermore, the finder of fact is free to believe all, part, or none of a witness's testimony. *Id.*, citing *State v. Gordon*, 10th Dist. No. 10AP-1174, 2011-Ohio-4208, ¶ 13, citing *Hill v. Briggs*, 111 Ohio App.3d 405, 411 (10th Dist.1996).

{¶ 29} Here, the trial court repeatedly stated it found Nelms's trial testimony to be very credible, whereas his recantation testimony at the hearing on the motion for new trial was not credible. Upon a thorough, independent review of the record, we cannot find the trial court abused its discretion in concluding that Nelms's recantation testimony was not credible.[1] As a result, we need not reach the issue of whether there is a strong probability that the new testimony would affect the outcome of the trial. *Id.* at ¶ 16 (finding that "[b]ecause the trial court here found the evidence wholly lacking in credibility, there was no need to determine whether the evidence would have affected the outcome of the trial"); *Woodward* at ¶ 22, 28-29. Nevertheless, we note that Nelms's identification of appellant as the shooter was corroborated by the testimony of Ussury.

{¶ 30} Accordingly, we overrule appellant's third assignment of error.

---

[1] We note the trial court stated that "[t]hrough discussions with the jury afterwards, it was clear that they found [Nelms] to be a credible witness as well." (Decision and Entry at 6.) Regardless of whether it was proper for the trial court, in making its credibility determination, to consider discussions with the jury regarding their deliberations, the court also independently found Nelms's trial testimony to be credible. Therefore, any error arising from the court's consideration of its discussion with jurors was harmless.

## IV.  First Assignment of Error—Sufficiency of the Evidence

{¶ 31} In his first assignment of error, appellant asserts the trial court erred in denying his motion for acquittal under Crim.R. 29.

{¶ 32} A motion for acquittal under Crim.R. 29 attacks the sufficiency of the evidence.  *State v. Watkins*, 10th Dist. No. 14AP-807, 2016-Ohio-1029, ¶ 17, citing *State v. Lytle*, 10th Dist. No. 13AP-866, 2015-Ohio-1133, ¶ 26; *State v. Elqatto*, 10th Dist. No. 11AP-914, 2012-Ohio-4303, ¶ 10.  Therefore, in reviewing whether the trial court erred in denying a motion for acquittal under Crim.R. 29, we apply the same standard used to review a challenge to the sufficiency of the evidence.  *State v. Kearns*, 10th Dist. No. 15AP-244, 2016-Ohio-5941, ¶ 44; *Watkins* at ¶ 17.

{¶ 33} Sufficiency of the evidence is a legal standard that tests whether the evidence is adequate to sustain a verdict as a matter of law.  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11; *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction.  *Id.*  "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction."  *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18, citing *Elqatto* at ¶ 20.

{¶ 34} Appellant contends the evidence presented at trial was insufficient to convict him of aggravated robbery, felonious assault, and improperly discharging a firearm.  With regard to all three convictions, appellant's arguments address the witnesses' degree of certainty or credibility in their identification of appellant as the perpetrator of the crimes.  " 'While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence.' "  *State v. Tucker*, 10th Dist. No. 15AP-434, 2016-Ohio-1033, ¶ 13, quoting *State v. Reed*, 10th Dist. No. 08AP-20, 2008-Ohio-6082, ¶ 48.  Thus, although appellant frames his assignment of error in terms

of sufficiency of the evidence, appellant's contentions actually address the manifest weight of the evidence. *Id.* at ¶ 14, citing *Reed* at ¶ 48; *State v. Williams*, 10th Dist. No. 14AP-546, 2015-Ohio-1136, ¶ 27, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (noting that when examining sufficiency of the evidence, appellate courts "do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction"); *State v. Chambers*, 10th Dist. No. 13AP-1093, 2014-Ohio-4648, ¶ 17. Therefore, appellant's contentions regarding the credibility of the witnesses are more appropriately considered in our analysis of his second assignment of error under the manifest weight standard of review. Nevertheless, we examine whether appellant's convictions were supported by sufficient evidence.

### A. Aggravated Robbery

{¶ 35} Pursuant to R.C. 2911.01(A)(1), a person is guilty of aggravated robbery if the person "in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense [had] a deadly weapon on or about the offender's person or under the offender's control and either display[ed] the weapon, brandish[ed] it, indicate[d] that the offender possesse[d] it, or use[d] it." Pursuant to R.C. 2913.01(K)(1), "theft offense" includes a violation of R.C. 2913.02, namely theft. R.C. 2913.02 provides that a person is guilty of theft when the person "with purpose to deprive the owner of property or services, * * * knowingly obtain[s] or exert[s] control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." "Deadly weapon" is defined in R.C. 2923.11 as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 36} At trial, Nelms testified appellant was the person who held a gun to his head in August 2014. At the same time appellant held a gun to Nelms's head, the individual known to Nelms as Mikey removed cash and a necklace from Nelms's person without his

permission. We find, viewing the evidence in a light most favorable to the state, there was sufficient evidence adduced at trial to convict appellant of aggravated robbery.

### B. Felonious Assault and Improper Discharge of a Firearm

{¶ 37} Pursuant to R.C. 2903.11(A)(2), a person is guilty of felonious assault if the person knowingly "cause[s] or attempt[s] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Pursuant to R.C. 2923.161, a person is guilty of improperly discharging a firearm if the person knowingly "[d]ischarge[s] a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." We have held that " 'an attempt to cause physical harm may be inferred from the act of firing the gun in the direction of an individual.' " *State v. Ribbans*, 10th Dist. No. 14AP-365, 2014-Ohio-5528, ¶ 22, quoting *State v. Gray*, 10th Dist. No. 04AP-938, 2005-Ohio-4563, ¶ 12, citing *State v. Thompson*, 10th Dist. No. 97APA04-489 (Nov. 10, 1997).

{¶ 38} At trial, Nelms testified appellant was the person who, on August 25, 2014, fired a gun at him from a vehicle. Nelms confirmed that appellant was the same person he identified to Detective Bray as the shooter during a photo array. Ussury also identified appellant as the passenger in a vehicle who fired a gun at Nelms. Ussury confirmed appellant was the same person she identified as the shooter during a photo array. T.H. and J.W. testified they were inside their residence on August 25, 2014 when J.W. was struck by a bullet. Therefore, viewing the evidence in a light most favorable to the state, we find there was sufficient evidence adduced at trial to convict appellant of felonious assault and improper discharge of a firearm.

### C. Firearm Specifications

{¶ 39} Appellant raised no arguments related to the firearm specifications attached to the convictions for aggravated robbery, felonious assault, and improper discharge of a firearm. Therefore, appellant has not met his burden to affirmatively demonstrate error on appeal regarding those specifications and any error related to those specifications is waived. *State v. T.E.H.*, 10th Dist. No. 16AP-384, 2017-Ohio-4140, ¶ 59; *James v. My Cute Car, LLC*, 10th Dist. No. 16AP-603, 2017-Ohio-1291, ¶ 10, quoting *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 94 (10th Dist.) (" 'It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged

error.' "); *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16, citing *Petro*, 2006-Ohio-943, at ¶ 51 ("The burden of affirmatively demonstrating error on appeal rests with the party asserting error."); App.R. 16(A).

{¶ 40} Accordingly, we overrule appellant's first assignment of error.

## V.  Second Assignment of Error—Manifest Weight

{¶ 41} In his second assignment of error, appellant asserts his convictions were against the manifest weight of the evidence.

{¶ 42} Whereas a challenge to the sufficiency of the evidence tests whether the evidence is adequate to sustain a verdict as a matter of law, a challenge to the manifest weight of the evidence relates to persuasion and tests whether the greater amount of credible evidence supports the verdict.  *Eastley* at ¶ 11-13; *Thompkins* at 386-87.  The Supreme Court of Ohio has stated:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.)    *Eastley* at ¶ 12, quoting *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 43} When reviewing a challenge to the manifest weight of the evidence, an appellate court cannot simply exchange its view for that of the trier of fact, but, instead, must " 'review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "  *State v. Williams*, 10th Dist. No. 16AP-540, 2017-Ohio-5598, ¶ 24, quoting *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387.  This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' "  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  In reviewing the evidence, "we are guided by the presumption that the jury, or

the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). *See Eastley* at ¶ 21.

{¶ 44} Appellant contends that "[w]hen viewing the record as a whole, it is clear that convicting [a]ppellant of these crimes based on the shifty testimony of the state's witnesses, coupled with the [a]ppellant's alibi witnesses, creates a manifest miscarriage of justice."  (Appellant's Brief at 12.)

{¶ 45} As previously noted, Nelms testified at trial that appellant was the person who held a gun to his head during the robbery and fired shots at him from the vehicle on August 25, 2014.  Nelms confirmed that appellant was the same person who he identified to Detective Bray as the suspect in the photo array. Nelms did not express doubts at trial regarding his identification of appellant.

{¶ 46} Nelms's identification of appellant as the person who fired shots at him from a vehicle was supported by the testimony of Ussury.  Ussury's testimony did not reflect any doubt about appellant's identity as the shooter on August 25, 2014.  Although she expressed she did not want to testify in the matter, Ussury confirmed appellant was the same person who fired at Nelms and whom she identified as the shooter in the photo array.

{¶ 47} With regard to appellant's alibi witnesses, the record reflects all three witnesses had some degree of connection, familial or otherwise to appellant.  Most importantly, there were questions raised during the testimony of Sheryl Meek and Smith concerning whether the event at which they recalled appellant being present occurred on a Friday or a Monday.  Detective Cutshall testified the shooting occurred on August 25, 2014, which was a Monday. Furthermore, Edwards' testimony regarding being asked to be an alibi witness although she was not present with appellant on August 25, 2014 is revealing.

{¶ 48} Based on the totality of the evidence, we find the state's evidence related to identification was stronger and more persuasive than appellant's alibi evidence.  The jurors were entitled to believe the state's evidence that appellant was the person

responsible for holding a gun to Nelms's head and for firing shots at Nelms that struck J.W. while she was in her residence. *See State v. Taylor*, 10th Dist. No. 17AP-103, 2017-Ohio-8327, ¶ 37, quoting *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964) (stating that "the jury may take note of the inconsistencies and resolve them accordingly, 'believ[ing] all, part, or none of a witness's testimony' "). As a result, we find there was a sufficient basis for the jury to disbelieve appellant's alibis. *See State v. Elson*, 10th Dist. No. 13AP-554, 2014-Ohio-2498, ¶ 27; *State v. Nickell*, 10th Dist. No. 13AP-336, 2013-Ohio-5144, ¶ 25-28.

{¶ 49} Therefore, having reviewed the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot find that the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶ 50} Accordingly, we overrule appellant's second assignment of error.

## VI. Conclusion

{¶ 51} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and HORTON, JJ., concur.

_____